**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TROY CHILCOTT,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 1:20-CV-289** |
| | ) | |
| | ) | |
| **v.** | ) | **Re: Motion for summary judgment [15]** |
| | ) | **Motion for summary judgment [19]** |
| | ) | |
| **CITY OF ERIE and** | ) | |
| **CORPORAL SARAH SCHARDT,** | ) | |
| **Defendants.** | ) | |

# MEMORANDUM OPINION

U.S. District Judge Susan Paradise Baxter

## I.      Relevant Procedural History

On July 26, 2019, Plaintiff Troy Chilcott ("Chilcott") was pulled over by Defendant Sarah Schardt ("Schardt"), a corporal with the City of Erie Police Department, who was responding to a radio dispatch concerning a disturbance in her vicinity that involved a weapon. Chilcot was arrested but the charges were later dismissed by the state court. Chilcott initiated this litigation on September 30, 2020. *See* ECF No. 1. He alleges claims against Schardt and the City for unlawful search and seizure (Count I) and false imprisonment (Count II) under the Fourth Amendment, and a *Monell* claim (Count III) based on the City's failure to train its police officers. *See id*. The parties decided to forego discovery and proceed directly to cross motions for summary judgment. *See* ECF No. 14. Defendants filed a motion for summary judgment. Chilcott has filed a motion for partial summary judgment on liability. The motions are now ripe for disposition.

1

## II.      Standard of Decision

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Federal Rule of Civil Procedure 56(a) provides that summary judgment must be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323, *quoting* Fed. R. Civ. P. 56. In other words, the moving party has the initial burden of proving to the district court the lack of evidence supporting the non-moving party's claims. *Id*. at 330.

After the moving party has satisfied this low burden, the non-moving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. *Id*. at 324. The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018) *quoting D.E. v. Cent. Dauphin Sch. Dist*., 765 F.3d 260, 268–69 (3d Cir. 2014).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski*, 904 F.3d at 288, *citing Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

### III.    Factual Background

The following factual background is set forth pursuant to the standards detailed above. As required by Local Rule and by the undersigned's Practices and Procedures, both parties have filed Concise Statements of Material Facts in support of their respective motions for summary judgment. However, Defendants have not responded to Plaintiff's Concise Statement as required and so the unopposed statements are deemed admitted. *See infra,* footnote 4.

On July 26, 2019, at 8:33 p.m. Denise Henderson called 911 to report a disturbance in the 1900 block of East Eighth Street in the City of Erie. Ms. Henderson described overhearing an argument inside the home of a neighbor. She reported that

> "I'm calling from 1911 East Eighth Street, but I'm calling because at 1912 East Eighth Street there's some fight going on, and a man came out of the house with a pistol talking about 'you pistol whipped me' and walking down Bacon Street with a pistol."

Ms. Henderson related that she saw a man come out of the house and saw him put a black pistol in his pants. Three minutes later, the Erie Police Department dispatched officers to respond to the call. The initial radio dispatch indicated that the call was a "weapons call" and that there was a

"male walking down the street waving a pistol" and that the subject male "got into a gray Ford F-150 northbound on Bacon." She described the truck as having shrubbery in the bed.

Based on her proximity, Corporal Schardt who was in uniform and driving a patrol car in the area responded to the call. A few minutes later, Schardt observed a vehicle matching the description provided by dispatch around 12th and Downing Streets. Schardt then turned around and took a position behind the truck now sitting at the intersection of 12th and Downing Streets. As the traffic light changed to green, Schardt activated her car's emergency red/blue lights and siren to conduct a traffic stop.

Plaintiff pulled his truck over into the grass. With her gun drawn, Corporal Schardt ordered him out of his vehicle. Other police officers arrived and placed Mr. Chilcott in handcuffs. Corporal Schardt was then dispatched to another call and she left the scene. Evidence found in Mr. Chilcott's vehicle formed the factual basis for his arrest and the filing of criminal charges. None of the criminal charges were based on Chilcott's conduct prior to the traffic stop.

As a result of his arrest, Chilcott was incarcerated for eight months which caused significant financial hardship for his family. Plaintiff alleges that during his incarceration, he lost his job. In order to make ends meet, his wife was forced to quit her job of seventeen years so that she could draw on her 401(k) retirement account to pay for a criminal defense attorney and to have funds for family and household expenses. The Chilcott's credit was ruined, vehicles including a camper and a truck were repossessed, and they defaulted on credit cards. They also lost their health insurance because Mrs. Chilcott had to quit her job in order to draw on her 401(k) account.

**IV.     The Motions for Summary Judgment**

Defendant Schardt argues that she is entitled to summary judgment on the unlawful search claim and the false imprisonment claim because she had a reasonable suspicion to initiate the vehicle stop. She principally contends that the information provided to her and other officers regarding a disturbance involving a gun on a city street, together with a specific description of the suspect's vehicle provided her with a reasonable, articulable suspicion to detain Chilcott. Further, Defendants contend that even if Schardt is found to have violated Chilcott's constitutional rights, she is entitled to qualified immunity. The City contends that because of a *Monell* claim's derivative nature and because Schardt did not violate Plaintiff's constitutional rights, the *Monell* claim fails.

As to the Fourth Amendment claims, Chilcott contends Schardt did not have a reasonable suspicion to stop him. First, Chilcott points to the decision of the state court in his criminal prosecution which concluded that the record was devoid of facts from which Schardt could have formed a reasonable suspicion for the traffic stop. *See Commonwealth v. Chilcott*, 240 A.2d 202 (Pa. Super. Ct. Aug. 26, 2020). Second, and irrespective of the application of the state court decision, Chilcott contends that the information provided to Schardt from the police dispatcher was insufficient to create a reasonable suspicion. Lastly, Chilcott argues that Schardt is not entitled to qualified immunity. Concerning his *Monell* claim, Chilcott contends that he should be entitled to discovery as to the failure of the City to train its police officers.

## V.    Discussion and Analysis

Difficult constitutional issues are typically involved in cases where qualified immunity is in question.[1] "When qualified immunity is raised at the summary judgment stage, the Court's analysis of the merits of the claims for purposes of summary judgment essentially merges with its analysis of the existence of a deprivation of federal rights for the purposes of qualified immunity." *Deitrick v. Costa*, 2014 WL 268681, at *8 (M.D. Pa. 2014) *citing Gruenke v. Seip*, 225 F.3d 290, 299-300 (3d Cir. 2000). Accordingly, the Court will first address whether Chilcott's rights were violated, and, if so, then determine whether Schardt is entitled to qualified immunity.[2]

### A.    The Fourth Amendment Claims against Corporal Schardt

The Fourth Amendment protects "[t]he rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "What is reasonable depends upon all the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985). At Count I, Chilcott alleges that Schardt "had no legitimate basis to pull Mr. Chilcott

---

[1] To determine if an officer is entitled to qualified immunity, courts utilize a two-prong analysis. *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. Apr. 8, 2021). At the first prong, the court asks if the facts, "[t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the court must "ask whether the right was clearly established," *id.*, because "the contours of the right must be sufficiently clear such that the unlawfulness of the action [wa]s apparent in light of pre-existing law," *Dougherty v. School Dist. of Phila.,* 772 F.3d 979, 993 (3d Cir. 2014) (citation and internal quotation marks omitted).

[2] A court may analyze and address these two prongs in whichever order it finds most appropriate for the case. *Lozano v. New Jersey*, 9 F.4th 239 (3d Cir. 2021) *citing Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

over," thus challenging the constitutionality of Schardt's investigatory stop under the Fourth Amendment. *See* ECF No. 1, ¶¶ 46-55.

Generally, warrantless searches "are presumptively unreasonable…." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006) *citing Katz v. United States*, 389 U.S. 347, 356-7 (1967). In *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968), the Supreme Court announced an exception to that general rule: "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (explaining *Terry* holding). *See also United States v. Lyons*, 2020 WL 429112, at *4 (W.D. Pa. 2020) ("A seizure under *Terry* is also known as an investigatory stop and requires that officers have reasonable articulable suspicion that criminal activity is afoot before they may restrain or detain a suspect."). Courts have held that "stopping a car and detaining its occupants is a seizure under the Fourth Amendment." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995).

Such investigatory stops are permitted if a police officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Terry*, 392 U.S. at 21. In order to make the required showing of reasonable suspicion, "the officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *United States v. Ubiles*, 224 F.3d 213, 217 (3d Cir. 2000). The reasonableness of an officer's suspicions are fact-specific to the circumstances confronting the officer and "must be measured by what the officers knew before they conducted their search" and not what they found during or after the search. *Florida v. J.L.*, 529 U.S. 266, 271 (2000).

At Count II, Chilcott raises a false imprisonment claim, also under the Fourth Amendment. *See* ECF No. 1, ¶¶ 56-63. Here, Chilcott alleges that he endured eight months of unlawful detention, as occasioned by the unconstitutional search and seizure. *Id*., ¶ 59. A claim for false imprisonment under § 1983 is based in the Fourth Amendment's guarantee against unreasonable seizures. *Garcia v. County of Bucks*, 155 F.Supp.2d 259, 265 (E.D. Pa. 2001).Therefore, where a claim that an officer lacked a reasonable suspicion to detain a person is sustained, a claim for false imprisonment may also be sustained. *See, e.g., Cost v. Borough of Dickson City*, 2020 WL 6083272, at *4 (M.D. Pa. Oct. 15, 2020), *aff'd*, 2021 WL 2255505 (3d Cir. June 3, 2021).

Accordingly, the lack of reasonable suspicion is an element of both claims. In other words, Chilcott must demonstrate that there was a lack of reasonable suspicion for the traffic stop to establish either of his legal claims against Corporal Schardt. And, conversely, if Corporal Schardt had reasonable suspicion to justify the traffic stop, both claims fail.

### 1.    The state court decision lacks preclusive effect in this case.

Before turning to its own independent analysis, this Court must first resolve whether the state court rulings in Chilcott's criminal prosecution—finding a lack of reasonable suspicion— have preclusive effect in this Section 1983 case. Chilcott seeks to use the state court decisions that Schardt lacked a reasonable suspicion for the traffic stop as determinative of the question for purposes of his § 1983 unlawful search and seizure and false imprisonment claims.

Chilcott's civil rights case is based on a traffic stop that led to his arrest and prosecution for possession of firearms without a license, possession of drug paraphernalia, driving under the influence, and driving under a suspended license. None of these criminal charges were factually

based on conduct that occurred prior to the vehicle stop, but instead are the result of evidence found in Chilcott's vehicle after it was stopped by police. Chilcott moved to suppress that evidence in state court. At a suppression hearing, the state trial court concluded Corporal Schardt did not have a reasonable suspicion to stop Chilcott's truck and, as a result, suppressed the evidence and dismissed the criminal charges against him. The Commonwealth appealed to the Pennsylvania Superior Court which affirmed the decision of the trial court, holding that Schardt's testimony during the suppression hearing

> … demonstrates convincingly that when Corporal Schardt effectuated the traffic stop *sub judice*, she could cite no articulable facts that established or described Chilcott's role in criminal activity or his imminent intent to perpetrate an offense, apart from his possession of a firearm. …
>
> In the absence of articulable, individualized suspicion that Chilcott engaged in criminal activity or was intent on committing an offense, the trial court correctly concluded that Chilcott's mere possession of a firearm did not raise valid grounds to support an investigative detention.

*Commonwealth v. Chilcott*, 240 A.3d 202, at *5 (Pa. Super. Aug. 26, 2020).

Chilcott contends that this Court must preclude Schardt from arguing in federal court that her traffic stop was constitutional. Schardt disagrees, arguing that she should be allowed to defend herself against the Fourth Amendment claims in federal court. She contends that the state courts' probable cause determinations cannot have preclusive effect in this later civil rights action because the state court judgment is not binding on the parties in this action. This Court agrees with Defendants.

Generally, defendants in a § 1983 action may raise a collateral estoppel defense when a plaintiff attempts to relitigate an issue decided adversely against him in a state criminal proceeding. *See Ingram v. Lupas*, 353 Fed. App'x 674, 676 (3d Cir. 2009) *citing Anela v. City of Wildwood*, 790 F.2d 1063, 1068 (3d Cir. 1986). The opposite, however, is not true. *See Smith v.*

*Hanuska*, 2011 WL 995985, at *5 (M.D. Pa. 2011). A plaintiff's assertion that collateral estoppel bars a defendant in a § 1983 action from relitigating a Fourth Amendment issue decided adversely to the government in a criminal prosecution is without support in this jurisdiction. *See id.*

Collateral estoppel does not apply here because Schardt and the City were not parties to the criminal proceedings against Chilcott in the state courts. Nor were they in privity with the Commonwealth in those criminal proceedings. A defendant in a § 1983 action, sued in his or her individual capacity, is not considered to be in privity with the government in a prior criminal prosecution. *See Smith v. Holtz*, 210 F.3d 186, 199 n.18 (3d Cir. 2000) *citing Morgan v Gertz*, 166 F.3d 1307, 1309 (10th Cir. 1999). *See also Tierney v. Davidson*, 133 F.3d 189, 195 (2d Cir. 1998) (state court's ruling suppressing evidence not entitled to preclusive effect in § 1983 action against police officers as officers were not parties to the criminal prosecution nor in privity with the state); 18A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice And Procedure 2d § 4458 (2002) ("A judgment against a government or one government official does not bind a different official in subsequent litigation that asserts a personal liability against the official[.]").

Based upon the foregoing, the Court finds that collateral estoppel does not automatically bar relitigation of the reasonable suspicion determination in this proceeding. *See, e.g., Zamichieli v. Andrews*, 2016 WL 8732421, at *6 (E.D. Pa. 2016). Therefore, the Court will make its own independent determination of whether Schardt's actions violated the Fourth Amendment.

### 2.        Defendant Schardt had reasonable suspicion to stop Chilcott.

Under *Terry v. Ohio*, 392 U.S. 1 (1968) and its progeny, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Valentine*, 232 F.3d 350, 353 (3d Cir. 2000) (citation and quotation marks omitted). "Reasonable, articulable suspicion is a less demanding standard than probable cause and requires a showing considerably less than a preponderance of the evidence, and only a minimal level of objective justification is necessary for a *Terry* stop." *United States v. Delfin–Colina*, 464 F.3d 392, 396 (3d Cir. 2006) (citations and internal quotation marks omitted). *See also DeNinno v. Municipality of Penn Hills*, 269 Fed. Appx. 153, 158 (3d Cir. 2008). That is to say, this requirement is not particularly onerous: "reasonable, articulable suspicion is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence,' and only a 'minimal level of objective justification' is necessary for a *Terry* stop." *Delfin-Colina,* 464 F.3d at 396, *quoting Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) and *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Still, "a police officer does have the initial burden of providing the 'specific, articulable facts' to justify a reasonable suspicion to believe than an individual has violated the … laws." *Id.* at 397. The court has to "consider whether the 'rational differences from those facts reasonably warrant [the] intrusion.'" *Id. quoting Terry*, 392 U.S. at 21. In the end, the court must "weigh 'the totality of the circumstances-the whole picture.'" *Id. quoting Sokolow*, 490 U.S. at 8. This is a highly factual inquiry. *See United States v. Goodrich*, 450 F.3d 552, 553 (3d Cir. 2006) (holding that the reasonable suspicion inquiry is highly fact-dependent in nature). As the Supreme Court has emphasized, "in the end we must ... slosh our way through the fact bound morass of 'reasonableness.'" *Scott v. Harris*, 550 U.S. 372, 383 (2007).

The key piece of information in this case was what the dispatcher told police officers: a suspect was "waving a pistol" while walking down a city street and then left the scene in a gray pick-up truck with a lot of shrubbery in the truck bed. The record reflects that an Erie Police Department radio dispatcher, upon receiving information from the 911 operator, sent out a call for officers to respond to a "weapons call" in the area of 1912 East Eighth Street where "there's a male walking down the street waving a pistol."[3] ECF No. 15-3, p. 2 (transcript of radio dispatch). The dispatcher further indicated that the subject "got into a gray Ford F-150 northbound on Bacon [Street]" and that the truck is "going to have some shrubs in the back of the F-150." *Id*.

That the suspect was "waving  a pistol" was further confirmed by the bulletin generated to Erie police officers on their Computer Aided Dispatch system ("CAD").  According to the CAD report generated at 8:35 p.m., Schardt was notified of a "Priority 1/Weapons/Firearms/MALE WALKING DOWN THE STREET WAIVING A PISTOL/WEAPONS INCIDENT." ECF No. 15-2, p. 1-2. This is the sum and substance, *i.e*., the totality of the circumstances, presented to Schardt before she identified a "Chevy with shrubs in the back" and commenced her investigatory stop. *Id*., p. 3.[4]

Weighing the totality of the circumstances, these facts satisfy the officer's need to "point to specific and articulable facts and reasonable inferences drawn from those facts in light of the officer's experience" in determining whether the officer had reasonable suspicion. That a suspect

---

[3] Neither party challenges the reliability of the 911 tip.

[4] Corporal Schardt testified that she did not observe any violations of the Vehicle Code or witness any behavior that suggested Chilcott was engaged in criminal conduct while driving that otherwise would have justified the traffic stop. The sole basis for the stop was the information provided by the 911 caller as related to Schardt through the police dispatch radio and CAD on her patrol car's computer screen. These facts are deemed admitted pursuant to Local Rule 56 due to Defendants' failure to file a response to the opposing party's concise statements. These facts are also supported by the record before this Court as Schardt testified to as much at the suppression hearing. *See* ECF No. 15-5, pages 1-2.

was waving or brandishing a gun has been found to provide police officers with reasonable suspicion sufficient to seize a person. Indeed, the Court of Appeals for the Third Circuit has held an investigatory stop to be reasonable when the officers were provided information including a car's make, model, and color, along with the race of the driver, and that a 911-caller had witnessed the driver brandishing a gun in public. *See United States v. Torres*, 2008 WL 2813035, at *1 (3d Cir. July 23, 2008). *See also McClendon v. Lewis*, 2005 WL 217026, at *5 (E.D. Pa. Jan. 27, 2005) (holding that police had reasonable suspicion to stop suspect after receiving information from a police radio broadcast reporting the description of a "male waving a gun.").

Chilcott argues that carrying a gun is not a crime in Pennsylvania and thus, cannot be the basis for reasonable suspicion to justify a stop. The United States Supreme Court has determined that, without more, a reasonable suspicion cannot arise from a tip that a person was carrying a gun. *See J.L.,* 529 U.S. at 268. *See also United States v. Valentine*, 232 F.3d 350, 355 (3d Cir. 2000) (holding "even if police officers have a reliable tip saying that someone is carrying a gun, that information alone will not provide enough evidence to support a *Terry* stop"). But this argument ignores the fact that the reports provided Schardt with more than just the information that the suspect was carrying a gun. Indeed, she received information which indicated that there was a disturbance at a residential address and that a suspect was "waving a pistol" while walking down the street after having been in a physical altercation. As the Supreme Court has noted, "[f]irearms are dangerous, and extraordinary dangers sometimes justify unusual precautions … *Terry's* rule … responds to this very concern." *J.L.*, 529 U.S. at 272. Corporal Schardt was not presented with information that someone was observed on the street merely carrying a weapon.

It is irrelevant to the legal determination here that the dispatcher may have incorrectly reported that the suspect was "waving a pistol." *See* ECF No. 24, p. 8. Nothing requires

13

dispatchers or police "to act with the calm deliberation associated with the judicial process." *Lyons*, 2020 WL 429112, at *12, *citing United States v. Torres*, 534 F.3d 207, 212 (3d Cir. 2008).

Thus, because Schardt had a reasonable suspicion based on articulable facts, she did not violate Chilcott's constitutional rights in conducting an investigatory stop of his vehicle. The existence of reasonable suspicion defeats both the unlawful search and seizure claim and the false imprisonment claim. Because no constitutional violation occurred, it is not necessary to discuss Schardt's qualified immunity argument. Summary judgment will be granted in favor of Corporal Schardt and against Chilcott in this regard.

### B. The *Monell* Claim against the City of Erie

Chilcott brings a *Monell* claim against the City of Erie based on its failure to train its police officers. A *Monell* claim against a municipality will not lie where, as here, a plaintiff "suffered no constitutional injury at the hands of an individual police officer." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Because Corporal Schardt's conduct did not violate Chilcott's constitutional rights, the *Monell* claim against the City fails.

An appropriate Order follows this Memorandum Opinion.

14